## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**LISA LOVELACE**
1500 Dalebrook Drive
Mitchellville, Maryland 20721

    *Plaintiff,*

v.

**MEDSTAR HEALTH, INC., d/b/a,**
**MEDSTAR WASHINGTON**
**HOSPITAL CENTER**
110 Irving Street, NW
WASHINGTON, DC   20010

    and

**MEDSTAR WASHINGTON**
**HOSPITAL CENTER, INC.**
110 Irving Street, NW
WASHINGTON, DC   20010

    and

**WASHINGTON HOSPITAL CENTER**
**CORPORATION**
110 Irving Street, NW
WASHINGTON, DC   20010

    and

**MEDSTAR MEDICAL GROUP II, LLC**
110 Irving Street, NW
WASHINGTON, DC   20010

    and

**MEDSTAR PHYSICIAN PARTNERS, INC.**
110 Irving Street, NW
WASHINGTON, DC   20010

    **SERVE:**

*Jury Trial Demanded

Civil Action No._____

**CT Corporation System**
**Registered Agent**
1015 15th Street, NW
Suite 1000
WASHINGTON, DC   20005

and

Larry D. McAfee
*Gleason, Flynn, Emig & McAfee*
*Attorneys at Law*
11 North Washington Street, Suite 400
Rockville, Maryland 20850
*Counsel for MedStar Washington*
*Hospital Center*

and

**Kevin Wells, M.D.**
110 Irving Street, NW
WASHINGTON, DC   20010
and

**Arjun Kanuri, M.D.**
110 Irving Street, NW
WASHINGTON, DC   20010

and

**Laura S. Johnson, M.D.**
110 Irving Street, NW
WASHINGTON, DC   20010

*Defendants*

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, by and through undersigned counsel and Hansel Law, PC, and

files this complaint against the Defendants, MedStar Health, Inc., d/b/a, MedStar Washington

Hospital Center, MedStar Washington Hospital Center, Inc., Washington Hospital Center

Corporation, MedStar Medical Group II, LLC, MedStar Physician Partners, Inc., Kevin Wells,

M.D., Arjun Kanuri, M.D., and Laura S. Johnson, M.D., on the grounds and in the amount set forth below:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants were doing business in the District of Columbia during the relevant time period and the acts or omissions that form the basis for claims against Defendants occurred in the District of Columbia.

3.      Written notice of the allegations and claims has been given to the Defendants more than 90 days prior to the filing of this action, in compliance with D.C. Code § 16-2802.

## PARTIES

4.      Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

5.      Plaintiff, Lisa Lovelace, is an adult citizen and resident of the State of Maryland, residing at 1500 Dalebrook Drive, Mitchellville, Maryland 20721

6.      At all times relevant, Defendant MedStar Health, Inc., d/b/a, MedStar Washington Hospital Center, was engaged in the practice of emergency medical care and treatment, and was in the business of providing health care services, through its employees and/or real and/or ostensible agents, including but not limited to, physicians and nurses, to those in need thereof, including Plaintiff, Lisa Lovelace.

7.      At all times relevant, Defendant MedStar Washington Hospital Center, Inc., was engaged in the practice of emergency medical care and treatment, and was in the business of

providing health care services, through its employees and/or real and/or ostensible agents, including but not limited to, physicians and nurses, to those in need thereof, including Plaintiff, Lisa Lovelace.

8.     At all times relevant, Defendant Washington Hospital Center Corporation, was engaged in the practice of emergency medical care and treatment, and was in the business of providing health care services, through its employees and/or real and/or ostensible agents, including but not limited to, physicians and nurses, to those in need thereof, including Plaintiff, Lisa Lovelace.

9.     At all times relevant, Defendant Washington Hospital Center Corporation, was engaged in the practice of emergency medical care and treatment, and was in the business of providing health care services, through its employees and/or real and/or ostensible agents, including but not limited to, physicians and nurses, to those in need thereof, including Plaintiff, Lisa Lovelace.

10.     At all times relevant, Defendant MedStar Medical Group II, LLC, was engaged in the practice of emergency medical care and treatment, and was in the business of providing health care services, through its employees and/or real and/or ostensible agents, including but not limited to, physicians and nurses, to those in need thereof, including Plaintiff, Lisa Lovelace.

11.     At all times relevant, Defendant MedStar Physician Partners, Inc., was engaged in the practice of emergency medical care and treatment, and was in the business of providing health care services, through its employees and/or real and/or ostensible agents, including but not limited to, physicians and nurses, to those in need thereof, including Plaintiff, Lisa Lovelace.

12.     At all times relevant hereto, Kevin Wells, M.D. (hereinafter, "Dr. Wells"), was a physician practicing in the specialty of ophthalmology, and at all times relevant herein was duly

licensed in the District of Columbia to provide health care services to persons in need thereof, including Plaintiff, Lisa Lovelace.

13.     At all times relevant hereto, Arjun Kanuri, M.D. (hereinafter, "Dr. Kanuri"), was a physician practicing in the specialty of plastic surgery, and at all times relevant herein was duly licensed in the District of Columbia to provide health care services to persons in need thereof, including Plaintiff, Lisa Lovelace.

14.     At all times relevant hereto, Laura S. Johnson, M.D. (hereinafter, "Dr. Johnson"), was a physician practicing in the specialty of emergency medicine, and at all times relevant herein was duly licensed in the District of Columbia to provide health care services to persons in need thereof, including Plaintiff, Lisa Lovelace.

## FACTS

15.     Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

16.     On January 25, 2016, Plaintiff, Ms. Lisa Lovelace ("Ms. Lovelace" of "Plaintiff") was admitted to Holy Cross Hospital in Silver Spring, Maryland where it was identified that she was presenting with symptoms of Stephens-Johnson Syndrome ("SJS").

17.     Within hours, Ms. Lovelace was transferred to Washington Hospital Center (hereinafter, "the hospital"), owned, operated, and otherwise controlled by the Defendants, MedStar Health, Inc., d/b/a, MedStar Washington Hospital Center, MedStar Washington Hospital Center, Inc., Washington Hospital Center Corporation, MedStar Medical Group II, LLC, MedStar Physician Partners, Inc., (collectively referred to as "Defendant Hospital") where she was admitted to the Burn SICU and treated by the herein named healthcare providers as real and/or ostensible

agents of the Defendant Hospital, and also treated by unidentified healthcare providers as real and/or ostensible agents of the Defendant Hospital.

18.     Upon arrival at the hospital Ms. Lovelace presented with a fever, diffuse rash and blisters across her body, and ulcerations and redness in her mouth.

19.     Ms. Lovelace was unable to eat or drink due to oral ulceration.

20.     She also presented with bilateral ocular involvement, with pain and conjunctivitis present in both eyes, however, with no presentation of corneal complications having yet developed.

21.     Ms. Lovelace was treated by the healthcare providers, including Drs. Wells, Kanuri, and Johnson, as well as unidentified healthcare providers as real and/or ostensible agents of the Defendant Hospital, from January 25, 2016 through and including February 25, 2016, during which time the healthcare providers failed to provide treatment to Ms. Lovelace's eyes in accordance with the national standard of care.

22.     The healthcare providers negligent medical treatment included, but was not limited to failing to provide daily ocular lubrication, antiviral treatment, or other necessary treatment such as daily inspection and debridement of the inferior and superior fornices, resulting in permanent injury and vision loss.

23.     The treatment of Ms. Lovelace by the healthcare providers is the direct and proximate cause of her permanent vision loss, resulting in Ms. Lovelace becoming legally blind.

24.     The Defendant Hospital, Drs. Wells, Kanuri, and Johnson, and any and/all real and/or ostensible agents of the Defendant Hospital, were negligent and deviated from the national standard of care by failing to properly treat Ms. Lovelace's eyes while she was under their care and treatment.

25.     Had Ms. Lovelace received ophthalmological care and treatment by the Defendants and any and all real and/or ostensible agents of the Defendants providing healthcare services to the Plaintiff, which met the national standard of care, Ms. Lovelace would not have lost her vision and would not be legally blind.

26.     The national standard of care would have required that the Defendants, and any and all real and/or ostensible agents of the Defendants providing healthcare services to the Plaintiff, provided daily ocular lubrication, antiviral treatment, or other necessary treatment such as daily inspection and debridement of the inferior and superior fornices to Ms. Lovelace while under their care and treatment.

27.     Had the Defendants acted in accordance with the national standard of care, Ms. Lovelace would not have suffered permanent debilitating vision loss.

28.     Ms. Lovelace would have never had to endure the resulting years of additional painful ophthalmological care, treatment, and therapy, requiring her to endure painful procedures in an attempt to regain a portion of her vision.

29.     The negligent acts of each of the Defendants, jointly and severally, as well as any other real and/or ostensible agents of the Defendants providing healthcare services to the Plaintiff at the hospital from January 25, 2016 through and including February 25, 2016, collectively caused the injury to Ms. Lovelace's eyes along with all of those damages associated with said injury, including both economic and non-economic damages.

30.     Ms. Lovelace was not told in a timely manner about the true condition of her eyes and impaired vision and was never told of the risks of her condition by the Defendants.  She was never offered treatment options that could have saved her vision, such as daily ocular lubrication, antiviral treatment, or other necessary treatment such as daily inspection and debridement of the

inferior and superior fornices, which would have resulted in a recovery of Ms. Lovelace's vision, as well as revealed the severity of her vision loss and need for proper ophthalmological treatment.

31.     Had Ms. Lovelace, or any reasonable person under the circumstances, been timely informed of the treatment options and relative risks, they would have elected to have treatments, including those detailed herein, to properly treat their eyes and vision.

32.     The negligent acts of the healthcare providers, including the Defendants identified herein, jointly, severally, and collectively caused Ms. Lovelace's permanent vision loss, resulting need for extensive future medical care and treatment, and ongoing disability.

## COUNT I
### (Medical Negligence)

33.     Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

34.     At all times relevant hereto, Defendant Hospital, acting through its respective employees and agents, real and/or ostensible, including, but not limited to Kevin Wells, M.D., Arjun Kanuri, M.D., and Laura S. Johnson, M.D., and other physicians, medical techs, nurses, and other healthcare providers, owed Ms. Lovelace the duty to exercise that degree of care and skill which a reasonably competent physician's group, Burn SICU group, emergency medicine group, physician, resident, nurse and/or similar health care provider would have exercised under similar circumstances.

35.     At all times relevant hereto, Dr. Kevin Wells, acting as an employee and/or agent, real and/or ostensible, of Defendant Hospital, owed Ms. Lovelace the duty to exercise that degree of care and skill which a reasonably competent physician and/or ophthalmologist and/or similar health care provider would have exercised under similar circumstances.

36.     At all times relevant hereto, Dr. Arjun Kanuri, acting as an employee and/or agent, real and/or ostensible, of Defendant Hospital, owed Ms. Lovelace the duty to exercise that degree of care and skill which a reasonably competent physician and/or plastic surgeon and/or similar health care provider would have exercised under similar circumstances.

37.     At all times relevant hereto, Dr. Laura S. Johnson, acting as an employee and/or agent, real and/or ostensible, of Defendant Hospital, owed Ms. Lovelace the duty to exercise that degree of care and skill which a reasonably competent physician and/or emergency medicine healthcare provider and/or similar health care provider would have exercised under similar circumstances.

38.     At all times relevant hereto, Defendant Hospital, individually and through its' respective employees and real and/or ostensible agents, including, but not limited to Kevin Wells, M.D., Arjun Kanuri, M.D., and Laura S. Johnson, M.D., and other physicians, medical techs, nurses, and other healthcare providers, were negligent in their care and treatment of Ms. Lovelace, including, but not limited to, the following particulars:

    a.    Failing to timely and properly care for and/or treat Ms. Lovelace so as to timely provide and maintain ophthalmological treatment;

    b.    Failing to timely and properly manage and/or monitor Ms. Lovelace, so as to prevent her vision loss;

    c.    Failing to timely and properly surgically and/or otherwise intervene so as to prevent the vision loss suffered by Ms. Lovelace;

    d.    Failing to timely and properly perform, interpret and repeat (when necessary) appropriate tests and analyses in order to properly treat Ms. Lovelace;

    e.    Failing to timely and properly administer the proper treatment in response to said tests and analyses;

    f.    Failing to timely and properly communicate and/or to properly formulate an appropriate treatment plan;

g.      Failing to timely and properly identify negligent conduct in Ms. Lovelace's ophthalmological care and treatment;

h.      Failing to have properly trained personnel caring for Ms. Lovelace;

i.      Failing to adequately train, supervise and instruct its agents, servants and employees;

j.      Failing to establish and/or enforce and/or follow appropriate policies and procedures and/or protocols;

k.      Failing to establish and/or follow and/or enforce appropriate policies, procedures and practices to address properly the needs of patients such as Ms. Lovelace;

l.      Failing to adequately credential, train, supervise and instruct their agents, servants and employees;

m.      Failing to properly communicate and document the pertinent physical findings pertaining to Ms. Lovelace;

n.      Failure to timely and properly manage Ms. Lovelace's symptoms;

o.      Failing to timely and properly obtain the proper consultations;

p.      Lack of informed consent;

q.      Defendant was otherwise negligent; and

r.      Plaintiffs also rely on *res ipsa loquitur*.

39.     The treatment of Ms. Lovelace by the Defendants is the direct and proximate cause of her permanent vision loss, and the Defendants' negligence and departure of the national standard of care.

40.     As a direct and proximate result of the aforementioned negligence of the Defendants, Ms. Lovelace, suffered, and continues to suffer, pain and suffering, mental anguish, disfigurement, deformities, inconvenience, discomfort, emotional anguish, ongoing medical expenses, permanent injury and disability—including but not limited to—vision loss.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, in the full sum of Ten Million Dollars ($10,000,000.00), plus costs and interest and any other relief deemed appropriate.

## COUNT II
### (Negligent Hiring, Training, Supervision and Retention)

41.     Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

42.     Defendant Hospital by and through its agents, employees, and staff was negligent when it failed to act with the prudence that a reasonably careful person or entity would exercise under circumstances similar to those in this case.

43.     The negligence of Defendant Hospital includes, but is not limited to, the following:

a. Negligent hiring;

b. Negligent training;

c. Negligent supervision; and

d. Negligent provision of hospital and medical services by its employees.

44.     As a direct and proximate result of the aforementioned negligence of the Defendants, Ms. Lovelace, suffered, and continues to suffer, pain and suffering, mental anguish, disfigurement, deformities, inconvenience, discomfort, emotional anguish, ongoing medical expenses, permanent injury and disability—including but not limited to—vision loss.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, in the full sum of Ten Million Dollars ($10,000,000.00), plus costs and interest and any other relief deemed appropriate.

## COUNT III
### (Lack of Informed Consent)

45.     Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

11

46.     Ms. Lovelace was never informed of the severity of her ophthalmological condition and she was never provided with the opportunity to receive ocular treatment for her worsening eye condition.

47.     Ms. Lovelace was never informed of the known risks to her vision and eyes while being treated by the Defendants for Stephens-Johnson Syndrome.

48.     Had Ms. Lovelace been informed of the known risks to her health and vision, she would have elected to receive other medicinal interventions to treat her eyes and thus would have avoided blindness and permanent vision loss.

49.     Any reasonable person would have elected to have treatment, including but not limited to: daily ocular lubrication, antiviral treatment, or other necessary treatment such as daily inspection and debridement of the inferior and superior fornices, if the options and risks had been explained in a timely fashion.

50.     The failure to acquire informed consent was a proximate cause of injuries, damages, and the permanent disability now experienced by Ms. Lovelace.

51.     As a direct and proximate result of the aforementioned negligence of the Defendants, Ms. Lovelace, suffered, and continues to suffer, pain and suffering, mental anguish, disfigurement, deformities, inconvenience, discomfort, emotional anguish, ongoing medical expenses, permanent injury and disability—including but not limited to—vision loss.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, in the full sum of Ten Million Dollars ($10,000,000.00), plus costs and interest and any other relief deemed appropriate.

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a jury as to all claims so triable.


Respectfully submitted,


HANSEL LAW, P.C.


/s/ Erienne A. Sutherell
Cary J. Hansel (Bar No. 14722)
cary@hansellaw.com
Erienne A. Sutherell (Bar No. 20087)
esutherell@hansellaw.com
2514 N. Charles Street
Baltimore, MD 21218
Phone: (301) 461-1040
Fax: (443) 451-8606
*Counsel for Plaintiffs*