UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA LOVELACE, | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 19-cv-001154 (ESH) ) |
| WASHINGTON HOSPITAL CENTER CORPORATION, d/b/a, MEDSTAR WASHINGTON HOSPITAL CENTER, *et al.*, | ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION & ORDER

Before the Court is defendant Washington Hospital Center Corporation d/b/a Medstar Washington Hospital Center's ("MWHC") motion for a protective order. (*See* Def.'s Mem. of Law, ECF No. 30.) MWHC requests that the Court enter an order permitting it to engage in *ex parte* communications with plaintiff Lisa Lovelace's treating physicians, arguing that utilizing formal discovery to speak to her numerous treating physicians would be costly and inefficient, and that such an order would be consistent with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and D.C. law. Lovelace opposes the entry of such an order. (*See* Pl.'s Opp., ECF No. 31.) For the reasons stated below, the Court will grant defendant's motion in part.

### FACTUAL BACKGROUND

Plaintiff Lisa Lovelace was admitted to MWHC's burn intensive care unit on January 25, 2016, after she was identified as presenting with symptoms of Stephens-Johnson Syndrome.

1

(*See* Compl. ¶¶ 15, 16, ECF No. 1.)  She alleges that "[w]hile she was being treated at the burn ICU, Defendant's employees failed to properly treat [her] eyes, resulting in her total blindness." (*See* Pl.'s Opp. at 1.)  Lovelace brought this action against MWHC on April 22, 2019, with claims of medical negligence; negligent hiring, training, supervision, and retention; and lack of informed consent.  (*See* Compl.)  She alleges that she is entitled to damages of at least $10,000,000.  (*See id.*)

On May 12, 2020, the parties filed a joint status report requesting the Court's assistance with a discovery dispute.  (*See* Joint Status Report, ECF No. 29.)  Defendant identified approximately 36 treating physicians, as well as rehabilitative counselors, who "are believed to have personal information that is calculated to lead to the discovery of admissible evidence." (*See id.* at 2.)  Because of the large number of treating physicians, many of whom are beyond the Court's subpoena power, defendant seeks to contact them *ex parte*, rather than engage in formal discovery.  Plaintiff objects, arguing that allowing defendant to make such contact would be destructive of the patient/physician relationship and possibly lead to intimidation of her healthcare providers, and that defendant has not shown good cause why it is necessary.  After a conference call with counsel, the Court ordered additional briefing.  (*See* ECF No. 30, 31.)

## ANALYSIS

Federal regulations implementing the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") provide that a patient's protected health information may be disclosed "in the course of any judicial or administrative proceeding . . . [i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order."  *See* 45 C.F.R. § 164.512(e)(1).  In *Street v. Hedgepath*, 607 A.2d 1238 (D.C. App. 1992), the District of Columbia Court of Appeals stated

that "*ex parte* interviews with a treating physician are a permissible means of informal discovery when the plaintiff has put the medical condition of that physician's patient at issue by filing a lawsuit." *Id.* at 1247. While *Street* was decided pre-HIPAA, multiple judges in the Superior Court, *see, e.g., Chatman v. Pearson*, No. 2016-CA-005909 M (JAD) (D.C. Super. Apr. 21, 2017), as well as Judge Kollar-Kotelly of this Court, concluded that it still reflects District of Columbia law that *ex parte* interviews are generally permissible in medical negligence cases. *See Lovecchio v. Washington Metro. Area Transit Auth.*, 319 F. Supp. 3d 262, 264 (D.D.C. 2018). Therefore, she held that "no authority prohibits Plaintiff's medical providers from disclosing Plaintiff's protected health information during *ex parte* interviews *if* this Court permits Defendant to conduct such interviews and issues a protective order delineating the scope of such disclosure," thus satisfying HIPAA. *Id.* (emphasis in original).

Judge Kollar-Kotelly went on to note that although *ex parte* interviews are allowed under District of Columbia and federal law, "[t]he Court is unaware of any case law or HIPAA provision establishing that Defendant is *entitled* to conduct ex parte interviews." *See id.* (emphasis in original). While there is no generally-accepted standard by which to analyze these motions, she determined that the "good cause" standard from Federal Rule of Civil Procedure 26 would be appropriate. *See id.* at 265. In *Lovecchio*, "good cause" was found due to, *inter alia*, the plaintiff's large number of treating physicians, no non-speculative concerns of intimidation by defendants if they were allowed *ex parte* interviews, and "Defendant's desire to test its legal theories through *ex parte* interviews." *See id.* at 265-66. As the D.C. Court of Appeals stated in *Street*, "no party to litigation has anything resembling a proprietary right to any witness's evidence." 607 A.2d at 1247 (quoting *Doe v. Ely Lilly & Co., Inc.*, 99 F.R.D. 126, 128 (D.D.C. 1983)).

The Court discerns no difference between this case and *Lovecchio*. Like the plaintiff in that case, Lovelace has been treated by numerous physicians since the incident about which she sues, meaning that the "efficiency gains of *ex parte* interviews in this case are . . . substantial." *Lovecchio*, 319 F. Supp. 3d at 265. Also, there are several physicians who are located in Baltimore and Boston and are thus beyond the Court's subpoena power. And while Lovelace argues that, unlike the plaintiff in *Lovecchio*, she has identified three of her subsequent treaters as those she intends to call as witnesses, the Court sees no reason why this should limit the treaters with whom defendant may speak. (*See* Def.'s Mem. of Law at 6 ("Such an argument ignores the fact that these health care providers could have information about causation or damages important to the defense of the case apart from whatever purpose for which Plaintiff intends to call three of them as witnesses during trial.").) Also like *Lovecchio*, while plaintiff claims that *ex parte* interviews with defendant may lead to intimidation of her healthcare providers or other untoward conduct (*see* Joint Status Report at 12-13), this "seem[s] little more than speculation." *Lovecchio*, 319 F. Supp. 3d at 265.

The Court is aware of other decisions in this district concluding that such reasons are insufficient to grant a defendant *ex parte* access to a plaintiff's physicians.[1] (*See* Joint Status Report at 5-6 (collecting cases).) This Court, sitting in a diversity action, is guided by the D.C. Court of Appeals' decision in *Street*, which admonished that "no party to litigation has anything resembling a proprietary right to any witness's evidence," *Street*, 607 A.2d at 1247 (internal quotation marks omitted), and therefore defendant may conduct *ex parte* interviews with plaintiff's treating physicians in compliance with the requirements set down below.

---

[1] A number of these cases cite to Maryland case law to support their decisions. *See, e.g., Bigelow v. Washington Hosp. Ctr.*, No. 10-cv-1461 (RLW) (D.D.C. Jan. 17, 2012) (citing as support *Jeffares v. Kheiri*, No. L-07-1923 (BEL) (D. Md. Nov. 19, 2008)).

## CONCLUSION

Upon consideration of the memoranda of law submitted by the parties, and for the reasons stated above, it is hereby:

**ORDERED** that MWHC's Request for Qualified Protective Order shall be **GRANTED IN PART**; it is further

**ORDERED** that the attorneys for MWHC shall be permitted to engage in *ex parte* discussions with only those healthcare providers of plaintiff Lisa Lovelace listed hereinafter, provided that such communications pertain to medical information as to which plaintiff has waived health care provider-patient privilege by filing the instant suit—that is, information relevant to the causes, treatment, extent, and consequences of the injuries for which the plaintiff here seeks compensation from the defendant.  This Order neither broadens nor restricts any party's ability to conduct discovery pursuant to the Federal Rules of Civil Procedure, the sole purpose hereof being to permit compliance with HIPAA.  The parties are free to seek amendment or modification of this Order as circumstances may dictate.

Nothing in this Order shall be deemed to relieve any party or attorney of the requirements of the Federal Rules of Civil Procedure.  Nothing in this Order permits disclosure of confidential communications, made for the purpose of diagnosis or treatment of a patient's mental or emotional condition, including alcohol or drug addition, among the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family, nor does this Order permit disclosure of records or information relating to HIV testing or sexually transmitted disease, except as such communications may pertain to specific allegations or claims being asserted in this case.

Nothing in this Order shall be construed to authorize any party or any attorney for any party to release, exchange, submit, or share any Protected Health Information with any other person or any other entity, other than an agent or employee of the attorney or party. This Order prohibits the parties from using or disclosing the Protected Health Information for any purpose other than this litigation or proceeding.

At the conclusion of this action and at the written request of a person whose Protected Health Information has been disclosed, or such person's authorized representative, all recipients of the Protected Health Information shall return to the requesting party the documents and all copies thereof containing Protected Health Information received by them pursuant to this Order, except that Protected Health Information, which is included in insurance claims files and law firm litigation files, may be retained to allow compliance to the extent and for the period that such retention is required by District of Columbia insurance laws and District of Columbia Bar rules and regulations; it is further

**ORDERED**, that without a subpoena, health care providers who treated plaintiff Lisa Lovelace shall be permitted, but not compelled, to disclose in discussions with the attorneys for defendant, outside the presence of plaintiff's attorneys and without prior authorization from plaintiff or her counsel, Protected Health Information of plaintiff that falls within the scope of this Order, which is intended to authorize such disclosures under the privacy regulations issued pursuant to HIPAA, *see* 45 C.F.R. § 164.512(e)(1); it is further

**ORDERED**, that any such discussion may include an attorney representing defendant and, if the medical provider so chooses, an attorney representing the health care provider or staff member. The medical providers are also free to request that Plaintiff or her attorney be present at any interview; it is further

**ORDERED**, that MWHC's attorneys shall provided the attached <u>Authorization to Release Medical Information</u> to any of plaintiff's health care providers they approach for informal discovery purposes.  This Authorization informs the physicians that they are neither required nor barred from providing information to defendant's attorneys and that they are free to consult with an attorney regarding this matter and to have an attorney or staff member(s) present during any communications with MWHC's attorneys; it is further

**ORDERED**, that counsel for defendant may engage in *ex parte* contact pursuant to this Order with the following treating health care providers of plaintiff Lisa Lovelace:

Christina Rapp Prescott, M.D., Ph.D.;
Esen K. Akpek, M.D.;
Allen O. Eghrari, M.D.;
Farhan Merali, M.D.;
Susan Huang, M.D.;
Un Simcha Soiberman, M.D.;
 John Gottsch, M.D.;
Fausto Rodriguez, M.D.;
M. Saheed, M.D.;
K. Balhara, M.D.;
Victoria Hamilton;
John B. Miller, M.D.;
Rebecca Mamo, M.D.;
C. Stephen Foster, M.D.;
Shannath Louise, M.D.;
Mary Oiu, M.D.;
Peter Chang, M.D.;
Thomas V. Johnson, III, M.D.;
Olivia Claudia Dryiski, M.D.;
Pradeep Ramulu, M.D.;
Michelle M. Hessen, OD;
Pradeep Yammanuru, M.D.;
Daniel Sarezky, M.D.;
Shannath Merbs, M.D., Ph.D;
Aakriti Garg, M.D.;
Mary Matthews, M.D.;
Joaquin O. deRojas, M.D.;
Roxana Fox, M.D.;
Robert Weinberg, M.D.;
Kathleen Lee, M.D.;

Szen Karakus, M.D.;
Priya M. Matthews, M.D.;
Jacqueline Weber, M.D.;
Salaam Sadi, M.D.;
Laura S. Kueny, M.D.;
Rodriguez Agramonte, M.D.;
Maxwell Helfgott, M.D.;
Nisha Patel, M.D.;

and it is further

**ORDERED** that defendant's attorney shall inform plaintiff's attorney of the names of each of plaintiff's treating physicians with whom he has spoken.

**SO ORDERED.**



ELLEN S. HUVELLE
United States District Judge

Date: June 2, 2020

## AUTHORIZATION TO RELEASE MEDICAL INFORMATION

In a case currently before Judge Ellen Segal Huvelle of the United States District Court for the District of Columbia, plaintiff Lisa Lovelace has filed suit asserting that the treatment she received from January 25 to February 25, 2016, at the burn intensive care unit at defendant Washington Hospital Center Corporation, d/b/a MedStar Washington Hospital Center, for Stephens-Johnson syndrome was negligent and resulted in her total blindness. The defendant has petitioned the Court for permission to speak informally with plaintiff's health care providers who treated her after this incident. As one of plaintiff's current or former treating health care providers, you are hereby authorized to speak with defendant's attorneys if you wish.

If you choose to speak with defendant's attorneys, you may disclose to them any of plaintiff's medical information that could be relevant to the causes, treatment, extent, and consequences of the injuries suffered by plaintiff. You may not disclose medical information that is not relevant to these injuries. You may not disclose records or information relating to HIV or AIDS testing or to sexually transmitted diseases.

The decision of whether to speak with defendant's attorneys is yours alone, and it would be inappropriate for either party to attempt to influence your decision. If you so desire, you are free to consult with an attorney regarding this matter, and you may have any attorney or member(s) of your staff present for any discussion with defendant's attorneys f you wish. If you so desire, you are also free to invite plaintiff and/or plaintiff's attorney to be present. It would, however, be inappropriate for plaintiff and/or plaintiff's attorney to insist or even suggest that they be present. That decision is also entirely up to you. You should be aware that the Court has ordered defendant's counsel to inform plaintiff's counsel if you have spoken to defendant's counsel.

So ordered, this 2nd of June, 2020.



ELLEN S. HUVELLE
United States District Judge