IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LISA LOVELACE,**<br><br>*Plaintiff*<br><br>v.<br><br>**WASHINGTON HOSPITAL CENTER CORP., d/b/a MEDSTAR WASHINGTON HOSPITAL CENTER,**<br><br>*Defendant* | Case No. 1:19-CV-001154 RCL |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE*
TO PRECLUDE REQUEST FOR SPECIFIC DOLLAR AMOUNTS
FOR NON-ECONOMIC DAMAGES**

COMES NOW the Plaintiff, by and through undersigned counsel, and respectfully files this Opposition to Defendant Washington Hospital Center Corporation (d/b/a Medstar Washington Hospital Center)'s Motion *in Limine* to Preclude Request for Specific Dollar Amounts for Non-Economic Damages, stating as follows:

## I.     INTRODUCTION

Defendant Washington Hospital Center Corporation (d/b/a Medstar Washington Hospital Center) has filed a motion requesting this Court preclude any request for specific dollar amounts for non-economic damages. Def. Mot. Lim.[1] In support of this motion, Defendant relies on an inapplicable legal standard in its argument because Courts have permitted and reaffirmed allowance of *Colston* arguments time and time again. Plaintiff should be permitted to request specific dollar amounts awarded for non-economic damages.

---

[1] Defendant's Motion *in Limine* to Preclude Request for Specific Dollar Amounts for Non-Economic Damages ("Def. Mot. Lim").

1

In the alternative, should the plaintiff be precluded from requesting any specific dollar amount, the same preclusion should apply to the defense. Of course, "zero," "nothing," no damages or words to that effect are all requests for a specific amount (*i.e.*, zero). If the plaintiff is to be precluded from requesting a figure of plaintiff's choosing, the defense should likewise be precluded from advocating for zero damages. Simple fairness and equity dictate this result.

## II. FACTUAL BACKGROUND

This matter arises out of Plaintiff's emergency visit to Washington Hospital Center on January 25, 2016. Pl.'s Compl. at ¶¶ 16-17. Plaintiff was presenting with symptoms of Stephens-Johnson Syndrome, such as fever, rash, blisters, ulcerations, and inability to eat or drink due to oral ulceration. *Id.* at ¶¶ 18-19. She presented with bilateral ocular involvement, with pain and conjunctivitis in both eyes. *Id* at ¶ 20. Plaintiff's healthcare providers failed to provide proper treatment to Plaintiff's eyes in accordance with national standards. *Id.* at ¶ 22. As a result of this negligence, Plaintiff permanently lost her vision. *Id.* at ¶ 23.

Defendant now moves to bar Plaintiff from mentioning any specific dollar amount for non-economic damages. For the reasons set forth herein, Defendant's motion should be denied.

## III. ARGUMENT

**1. *Colston* Held it Proper to Raise Specific Non-Economic Monetary Damages in Closing Arguments**

   *a. The Current Legal Standard*

This jurisdiction has repeatedly set precedent that would make it improper to preclude Plaintiff from suggesting a dollar amount for non-economic damages. *See e.g.*, *District of Columbia v. Colston*, 468 A.2d 954 (D.C. 1983) (finding counsel's closing argument to the jury was *not* improper); *Hechinger Co. v. Johnson*, 761 A.2d 15 (D.C. 2000); *Roberts-Williams v. Howard University*, 37 A.3d 896 (D.C. 2012) (holding it proper for counsel to stress aspects of

the case to the jury which make the client's claim serious); *Chucker v. Berger,* D.C. Court of Appeals, No. 12-CV-1904 (D.C. 2013) (Upholding precedent that permits counsel to suggest Plaintiff's pain and suffering is worth damages to the jury); *Evening Star Newspaper Co. v. Gray*, 179 A.2d 377 (D.C. 1962) (Holding that counsel has considerable latitude in arguing non-economic damages to the jury and that such an argument is not evidence). In this jurisdiction, precedent does not prohibit Plaintiff from suggesting a specific dollar amount to the jury when it goes toward the severity of the case at hand. *Id.* The Defense itself acknowledges that *Colston* permitted such a closing argument. Def. Mot. Lim. at 7.

*Colston* was most heavily relied upon in the opposition's argument, but even *Colston* refused to reject counsel's argument to the jury. Def. Mot. Lim.; *Colston*, 468 A.2d 954, 958 (D.C. 1983). The Defendant noted that the *Colston* Court held "counsel must always be permitted to argue that his client's case is a serious one and to stress those aspects of the case that contribute to its seriousness." Def. Mot. Lim. at 2; *Colston,* 957–58. However, the Defense failed to acknowledge the test for determining whether an argument to the jury violates principles of fairness. *Id.* This Court has repeatedly held that fairness of counsel's argument to the jury "must be assessed in the context of all other evidence proceedings at trial." *Id.*; *see also Haigler v. Logan Motor Co.*, 86 A.2d 108, 109 (D.C. 1952).

    b. *Distinguishing Between a Permissible and Impermissible Jury Argument*

In *Colston,* the Court distinguished a permissible argument to the jury from an improper argument to the jury. Colston, at 957. The Court held it improper for counsel to use "golden rule" arguments. *Colston,* at 957–58. The *Colston* Court contrasted the statements at issue from the improper argument made in *Delaware Olds, Inc. v. Dixon*, where counsel's closing argument

3

repeatedly asked the jury members to determine damages by trying to imagine themselves in the shoes of the Plaintiff as a plea for sympathy. 367 A.2d 178, n.1 (Del. 1976); *Colston* at 959.

    *Colston*'s counsel stated the following in closing arguments:

> Consider that loss of that eye as the major element of damages. How much is an eye worth? How much is a healthy eye worth? You cannot restore his vision but you can compensate him for the loss. Is an eye worth five hundred thousand? Eight hundred thousand? A million? That is for you to say. That is for you to decide. But, ask yourself this question. If Johnny Colston on February the fifth had been offered one million dollars for his healthy eye, you ask yourself if he would have accepted? You decide what that eye is worth.

This language from counsel in *Colston* differs in that it does not continuously ask the jurors to place themselves in the shoes of the Plaintiff. *Id.* Further, the *Colston* Court stated this language was *permissible* because counsel never asked the jury to award a specific amount but instead asked for a "substantial amount" in damages. *Id.* Counsel also made it clear that it was completely up to the jury to decide the specific amount of damages to award. *Id.*

    Similarly, the D.C. Court of Appeals reiterated the permissibility of this type of language in *Howard University v. Robert-Williams.* 37 A.3d 896, 912 (D.C. 2012). Counsel's closing argument to the jury states, "[h]ow much is [Plaintiff's] damaged career and professional reputation worth? Is it $300,000, $500,000, $800,000? That is for you to decide." *Id.* Again, the Court affirmed that this language was *permitted* so long as it did not include language that violated the "golden rule." *Id.*

    Ultimately, *Colston* arguments are permitted according to well-established precedent so long as the Plaintiff informs the jury that the amount of damages awarded is purely a decision to be made by the jury. *Colston* at 959.

### 2. A *Colston* or *Per Diem* Argument Would not "Run Afoul" of Established Principles Governing Closing Arguments

The Defense argues that any possibility of entering the realm of a *Colston* or *per diem* argument would automatically equate with numerous ethical and judicial violations, but this is simply not the case. Specifically, Defendant argues that a *Colston* or *per diem* argument would: 1) argue additional facts not in the evidence, 2) permit counsel to express personal opinions, and 3) invade the province of the jury. Def. Mot. Lim. at 7–9. However, there are safeguards in place to prevent the Defense's fears from coming to fruition. For example, jury instructions are intended to mitigate the risk of influencing or prejudicing the jury's decision. The trial judge will typically instruct the jurors to exclusively base their conclusions on the evidence presented at trial, and that opening and closing statements are not evidence. *See American Bar Association*, How Courts Work.[2] The *Colston* majority suggested the trial judge instruct the jury to "avoid allowing passion, prejudice, or sympathy to influence its decision." *Colston*, at 958 (D.C. 1983).

Additionally, courts retain the power to reduce or set aside excessively high verdicts and verdicts resulting from prejudice, mistake, oversight, or "any other reason that justifies relief." *See* Fed. R. Civ. P. 60. The *Evening Star* Court expressly stated to always remember "that if a jury does return an obviously excessive verdict, the trial judge has the power and duty to set aside such verdict and order a new trial." *Evening Star Newspaper Co. v. Gray*, 179 A.2d 377, 382 (D.C. 1962).

---

[2] *American Bar Association*, How Courts Work, https://www.americanbar.org/groups/public_education/resources/law_related_education_network/how_courts_work/juryinstruct/

Courts have also noted the merit of permitting lawyers to assist juries in determining the value of pain and suffering. *Evening Star*, at 382.[3] For example, *per diem* or *Colston* arguments can often be helpful to juries who process and understand information with visuals and illustrative assistance. *Id.*

### 3. Permitting Counsel to Argue a Dollar Amount Goes to the Seriousness of Plaintiff's Case

"A lawyer has the right to argue to the jury that his client's case is a serious one" and stress the aspects of the case that make the client's claim severe. *Borger v. Conner*, 210 A.2d 546, 549 (D.C. 1965); *Hechinger Co. v. Johnson,* 761 A.2d 15, 21 (D.C. 2000). This case involves a serious medical malpractice suit, which warrants allowing the jury understanding the depth of this suit from every angle. Limiting Plaintiff's ability to convey the severity of her situation will be unfairly prejudicial.

Research shows that a *per diem* argument or the like allows Plaintiffs to explain the basis for the demand made. John Campbell, *et al.* Time is Money: An Empirical Assessment of Non-Economic Damages Arguments, 95 Wash. Univ. L. Rev. 1 (2017). Such arguments help preserve the credibility of Plaintiff's demand by assisting juror's with understanding the non-economic categories. *Id.* Excluding *per diem* or *Colston* arguments would negatively impact Plaintiff's credibility toward the jury and limit her ability to assist the jury with understanding her pain, suffering, and other non-economic categories. Excluding Plaintiff from arguing a dollar amount to the jury regarding non-economic damages will unfairly prejudice Plaintiff.

---

[3] The Court stated "we require juries to determine the value of pain and suffering. We see little merit in forbidding lawyers to try to help in that difficult task." *Evening Star*, 179 A.2d 377, 382 (D.C. 1962).

### 4. *Per diem* Arguments Do Not Significantly Impact Damage Awards

District of Columbia Court of Appeals has held that "[t]here is no reason to think that [a] *Colston*-type argument affect[s] the determination of damages in any way." *Howard Univ. v. Roberts-Williams*, 37 A.3d 896, 912 (D.C. 2012). A simulation performed at the Sturm College of Law of the University of Denver studied the impact of *per diem* arguments on jury awards. *See source cited supra* Part III.3. The study concluded that such arguments *do not* dramatically increase damage awards. *Id.* at 5. *Per diem* arguments were found to impact damage awards minimally. *Id.* The study analyzed various damage awards depending on the type of argument conveyed by counsel. *Id.* The outcome of the 2017 study confirmed the fears of the defense; a *per diem argument* to a jury increased the value of damages, but only by less than .05%. *Id.* at 27. To say that *per diem* arguments significantly inflate the amount of awarded damages would be a grave error based on an outdated study from over twenty years ago.

### 5. Alternatively, Any Ruling Precluding a Specific Number for Damages Should Apply to All Parties.

If, despite the Plaintiff's objections, this Court is inclined to prohibit Plaintiff from mentioning any damages figure to the jury, then this principle should apply uniformly to both parties. Under these circumstances, the Defense should also be prohibited from suggesting an amount of damages to the jury. Just as Plaintiff would not be able to suggest specific non-economic damages, the Defense cannot suggest the jury to award "nothing," "zero," no damages or words to that effect. "Zero" is just as specific and particularized as any other figure after all.

### IV. CONCLUSION

The Court should not preclude Plaintiff from requesting specific dollar amounts for non-economic damages. Plaintiff should be permitted to convey the aspects of this case that deem it to be of the utmost severity, whether that be in the form of a *Colston* or *per diem* argument. For

the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion *in Limine*.

Respectfully submitted,

HANSEL LAW, PC

*/s/ Cary Hansel*
Cary J. Hansel (Bar No.: 14722)
cary@hansellaw.com
2514 North Charles Street
Baltimore, Maryland 21218
T: 301-461-1040
F: 443-451-8606
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of October, 2022, I caused the foregoing to be filed with the Court's electronic filing system, which will effect service on all parties so entitled.

*/s/ Cary Hansel*
Cary J. Hansel